730 So.2d 735 (1999)
FIRST COLONY LIFE INSURANCE COMPANY, Appellant,
v.
SUN STATE CAPITAL FUNDING, INC., and Patricia Ann Parker, formerly known as Patricia Ann Brown, Appellees.
No. 98-01526.
District Court of Appeal of Florida, Second District.
March 10, 1999.
Patricia A. Burton, Wilton Manors, for Appellant.
Mark G. Rodriguez of Woodruff & Jeeves, P.A., St. Petersburg, for Appellee Sun State Capital Funding, Inc.
No appearance on behalf of Appellee Patricia Ann Parker.
ALTENBERND, Judge.
First Colony Life Insurance Company (First Colony) appeals a final order of garnishment entered against it in favor of Sun State Capital Funding, Inc. (Sun State). The order was entered without an evidentiary hearing and is comparable to a judgment on the pleadings. We reverse because there are unresolved factual issues in this case. We provide a detailed description of the underlying financial transaction because it involves an assignment of payments under a structured settlement agreement, which frustrates *736 the intent of that agreement. This case suggests a need for additional state regulation of structured settlement agreements to protect the beneficiaries of those agreements.
Patricia Ann Parker, f/k/a Patricia Ann Brown, individually, and as personal representative of the estate of Kelvin Leon Brown, filed a lawsuit in the Ninth Judicial Circuit against Bob Dance Jeep Eagle, Inc., concerning an automobile accident on the Bee Line Expressway in Orange County, Florida. The accident occurred on June 16, 1993, and apparently resulted in the death of Mr. Brown and damages to Ms. Parker.[1] On April 25, 1996, Ms. Parker signed a structured settlement agreement with Shelby Insurance Company to resolve this claim. The structured settlement agreement provided for a payment of $160,000 at the time of settlement and an additional $162,500, payable in six installments beginning on May 1, 1999, and ending on May 1, 2011. The agreement provided that no portion of the payments could be "accelerated, deferred, increased or decreased, anticipated, sold, assigned, pledged, or encumbered by Plaintiff or Payee." This agreement apparently was finalized on June 11, 1996.
Such agreements have complicated federal income tax ramifications that need not be discussed in this opinion, but suffice it to say that the agreement allowed a "qualified assignment" of the defendant's and insurer's obligations under the agreement pursuant to section 130(c) of the Internal Revenue Code of 1986. The agreement specified that the defendant and the insurer could purchase two separate annuities to fund the six installment payments. It was agreed that First Colony would provide an annuity to fund three payments: $25,000 on May 1, 2002; $30,000 on May 1, 2005; and $20,000 on May 1, 2008. The actual annuity is not in our record but no party denies that First Colony has issued or arranged for the issuance of such an annuity. The legal owner of the annuity is allegedly Jamestown Life Insurance Company (Jamestown Life). Ms. Parker is only the beneficiary of the annuity.
On June 20, 1997, about a year after Ms. Parker settled this lawsuit, she entered into a "Fund Acquisition Agreement" with Sun State. At the same time, she executed a "Change of Beneficiary Agreement." Accurate copies of those agreements are appended to this opinion. In essence, Ms. Parker agreed to change the beneficiary status on the annuity for the first two payments so that Sun State would receive these payments. In exchange for these future payments totalling $55,000, Ms. Parker received a net payment of $16,000 in June 1997.[2] Even adjusting the future payments to present value using a very high interest rate, this transaction appears to favor Sun State.
In paragraph 4(B) of the Fund Acquisition Agreement, Ms. Parker agreed to provide a "payment and/or performance bond within 3 days of the date hereof" in the amount of $46,200 as security. It is unclear from our record how or where Ms. Parker was to obtain such a performance bond. She apparently did not obtain the bond by June 23, 1997.
Accordingly, Sun State sued Ms. Parker for breach of the agreement because she did not obtain the bond. This suit was filed in Hillsborough County, even though the agreement selects Pinellas County as the appropriate venue, and Ms. Parker apparently lives in Orange County. The suit was filed on July 24, 1997, only a month after her failure to obtain the bond.
Oddly, Ms. Parker's attorney from Pinellas County, Collin D. Vause, served an answer to the complaint one day later in which Ms. Parker admits the allegations, waives her right to any final hearing, and consents to the entry of a judgment against her for all relief requested in the complaint without further notice to her.[3] In late August, a joint *737 stipulation was filed authorizing a $55,000 judgment to be entered against Patricia Ann Parker, including language to enjoin her from taking any action to rescind or cancel the change of beneficiary agreement. On August 26, 1997, the trial court entered a judgment against Ms. Parker for $55,000, "which shall bear interest at the rate prescribed by law and for which let execution issue." The judgment also enjoined her from taking any action to rescind or cancel the change of beneficiary agreement.
Thus, in exchange for a payment of $16,000 to Ms. Parker on June 20, 1997, Sun State received a judgment on August 26, 1997, for $55,000 plus legal interest. At least on paper, Sun State tripled the value of its asset in two months. Because interest is accruing on the judgment effective August 26, 1997, the future payments of $55,000, if made, will still leave a sizeable judgment against Ms. Parker.[4]
On September 15, 1997, Sun State filed a short motion for "continuing" writ of garnishment against First Colony. The motion contains few factual allegations and does not state the legal basis for a "continuing" writ[5] nor does it explain what debt is due from First Colony to Ms. Parker or what property of hers may be in First Colony's possession. On September 15, the trial court entered an order authorizing the issuance of a continuing writ against First Colony. Our record does not contain a copy of the writ.[6]
First Colony answered the writ, denying that it had any personal property of Patricia Ann Parker. It admitted that she was the designated future payee on a single premium annuity contract owned by Jamestown Life and alleged the three future payments previously described in this opinion. It alleged that the benefits under the structured settlement could not be assigned pursuant to the terms of the agreement and that the annuity contract was a "qualified funding asset" for purposes of the Internal Revenue Code. It maintained that any amount owed to Ms. Parker was actually owed by Jamestown Life and that First Colony was only a legal guarantor. It also raised the statutory exemption from garnishment of annuity contracts pursuant to section 222.14, Florida Statutes (1997). A representative of Jamestown Life filed an affidavit supporting the answer.
Sun State then filed a motion for entry of continuing final garnishment judgment.[7] On March 5, 1998, the trial court entered a final garnishment judgment requiring First Colony to pay $25,000 to Sun State on May 1, 2002, and $30,000 on May 1, 2005. This judgment was entered without an evidentiary hearing and was based on arguments of counsel and the contents of the record. It is this judgment that First Colony has appealed. First Colony is concerned that the judgment, if affirmed, may have adverse tax consequences for First Colony and for Ms. Parker.
The record in this case presents numerous questions and few answers. Sun State did not file a reply to First Colony's answer and, thus, the answer is taken as true. See § 77.082, Fla. Stat. (1997). On this record, *738 there is no evidence of any debt due from First Colony to Ms. Parker that would be subject to garnishment and no basis to use a "continuing" writ to attempt collection of an amount that may become due years in the future. See Gieger v. Sun First Nat'l Bank, 427 So.2d 815, 818 (Fla. 5th DCA 1983) (trial court erred in ordering garnishment of future payments on installment promissory note). Accordingly, we reverse this judgment and remand this case to the circuit court for further proceedings.
Reversed and remanded.
PATTERSON, A.C.J., and BLUE, J., Concur.

APPENDIX

*739 
*740 
*741 
*742 
*743 
*744 
*745 
*746 
NOTES
[1] Our record contains very limited information about the tort claim. The information comes from the recitals in the settlement agreement and release.
[2] She paid a "brokerage fee" of $1,890.13 to someone as a part of this transaction.
[3] These facts suggest that Ms. Parker may have signed some document when she received the money from Sun State that appointed Mr. Vause as her attorney and authorized him to consent to judgment. Our record, however, does not explain why he filed this answer when he did.
[4] Ms. Parker did not appeal this judgment. She has not actively participated in the garnishment action or in this appeal. Pursuant to Florida Rule of Appellate Procedure 9.020(g)(2), she is an appellee.
[5] See § 77.0305, Fla. Stat. (1997) (providing for continuing writs of garnishments against employer for salary or wages). Cf. Hernando County v. Warner, 705 So.2d 1053 (Fla. 5th DCA 1998) (noting that section 77.0305 subjects the county to garnishment proceedings when the judgment debtor is an employee owed wages or salary). We are not aware of any other statutory authority for continuing writs of garnishment.
[6] Although our record does not contain a copy of the writ, First Colony submitted an appendix with what purports to be a copy of the "Continuing Writ of Garnishment." This writ is not in conformity with Florida Rule of Civil Procedure Form 1.907(b), but rather includes the provisions required by Florida Rule of Civil Procedure 1.907(a) and then adds a paragraph:

If Garnishee is required to make pariodic [sic] payments to Defendant, then Garnishee is required to withhold the payment of the periodic payments that accrue or are payable on or after the date of service of this Writ until further order of court.
We are not aware of any legal basis for this paragraph.
[7] Our record does not establish that notice was given to Ms. Parker pursuant to section 77.055, Florida Statutes (1997). Sun State may maintain that she waived such notice.