Marlene **ALEJANDRE**, individually and as personal representative of the Estate of Armando Alejandre, deceased, Plaintiff,

v.

**THE REPUBLIC OF CUBA** and the Cuban Air Force, Defendants,

v.

**AT & T Corporation, AT & T of Puerto Rico, Inc., Global One Communications, L.L.C., Sprint Corporation, Wiltel, Inc., Telefonica Larga Distancia de Puerto Rico, Inc., MCI International, Inc., IDB WORLDCOM Services, Inc., MCI WORLDCOM, Inc., Citigroup Inc. and Its Subsidiaries, and The Chase Manhattan Corporation and Its Subsidiaries, Garnishees.**

Mirta Mendez, as personal representative of the Estate of Carlos Alberto Costa, deceased, Plaintiff,

v.

The Republic of Cuba and the Cuban Air Force, Defendants,

v.

**AT & T Corporation, AT & T of Puerto Rico, Inc., Global One Communications, L.L.C., Sprint Corporation, Wiltel, Inc., Telefonica Larga Distancia de Puerto Rico, Inc., MCI International, Inc., IDB WORLDCOM Services, Inc., MCI WORLDCOM, Inc., Citigroup Inc. and Its Subsidiaries, and The Chase Manhattan Corporation and Its Subsidiaries, Garnishees.**

Mario T. **DE LA Pena** and Miriam de La Pena, individually and as personal representatives of the Estate of Mario M. de La Pena, deceased, Plaintiff,

v.

The Republic of Cuba and the Cuban Air Force, Defendants,

v.

**AT & T Corporation, AT & T of Puerto Rico, Inc., Global One Communications, L.L.C., Sprint Corporation, Wiltel, Inc., Telefonica Larga Distancia**

de Puerto Rico, Inc., MCI International, Inc., IDB WORLDCOM Services, Inc., MCI WORLDCOM, Inc., Citigroup Inc. and Its Subsidiaries, and The Chase Manhattan Corporation and Its Subsidiaries, Garnishees.

Nos. 96–10126–CIV, 96–10127–CIV, 96–10128–CIV.

United States District Court, S.D. Florida.

June 16, 1999.

See also 183 F.3d 1277.

Aaron Podhurst, Miami, FL, Roberto Martinez, Miami, FL, Francisco R. Angones, Miami, FL, for Plaintiffs.

Donald Hayden, Miami, FL, Thomas Meeks, Miami, FL, Carol Federighi, Civil Division/Federal Programs Branch, Washington, D.C., Eric Lieberman, New York, NY, David George, Boca Raton, FL, Laura Besvinick, Miami, FL, for Defendants.

### *ORDER GRANTING MOTIONS TO QUASH SERVICE OF SECOND WRITS OF GARNISHMENT, DENYING AS MOOT MOTIONS TO DISSOLVE SECOND WRITS OF GARNISHMENT, AND DENYING MOTIONS FOR PROTECTIVE ORDER*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on two Motions To Quash Service Of Second Writs Of Garnishment, three Motions To Dissolve Second Writs Of Garnishment, and two Motions For Protective Order. The Court heard Oral Argument on all these Motions on June 3, 1999.

This Order first will address the Motions To Quash, filed (1) by AT & T Corp. ("AT & T") on April 7, 1999,[1] and (2) by MCI WORLDCOM, Inc., MCI Interna-

---

**1.** Plaintiffs filed a response to AT & T's Motion To Quash on April 21, 1999, to which AT & T replied on April 30, 1999.

tional, Inc., IDB WORLDCOM Services, Inc., and Wiltel, Inc. (collectively, "the MCI Entities") on March 30, 1999.[2] The Court then will rule on the Motions To Dissolve, filed (1) by Empresa de Telecomunicaciones, S.A. ("ETECSA") on April 23, 1999,[3] (2) by Empresa de Radiocomunicacion y Difusion de Cuba ("Radiocuba") and Empresa de Telecomunicaciones Internacionales ("Emtelcuba") on May 10, 1999,[4] and (3) by the MCI Entities on March 30, 1999. Finally, the Court will rule on the Motions for Protective Order, filed (1) by AT & T on May 12, 1999,[5] and (2) by ETECSA on May 17, 1999.[6]

## I. Motions To Quash Service Of Second Writs Of Garnishment

### A. *AT & T's Motion*

■ With respect to writs of garnishment, Florida law states that "[a]fter judgment has been obtained against defendant but before the writ of garnishment is issued, the plaintiff, the plaintiff's agent or attorney, *shall file a motion*... stating the amount of the judgment and that movant does not believe that defendant has in his or her possession visible property on which a levy can be made sufficient to satisfy the judgment." Fla. Stat. Ann. § 77.03 (West 1998) (emphasis added). This provision dictates that, in order to garnish funds owed by a defendant to other parties, a plaintiff must first procure leave of court to issue a writ of garnishment. As a corollary to this rule, Florida law does not allow continuous writs of garnishment in cases such as the ones at hand. *See, e.g., First Colony Life Ins. Co. v. Sun State Capital Funding, Inc.,* 730 So.2d 735, 1999 Fla. App. LEXIS 2471, at *9 (Fla.App.2d Dist. 1999).

In its April 7, 1999 Motion, AT & T argues that the Clerk of the Court lacked any legal basis upon which to issue the second Writ of Garnishment because Plaintiffs failed to procure an order from this Court authorizing such issuance. *See* AT & T's Mot. To Quash, at 2. AT & T therefore maintains that service of the second Writ must be quashed. *See id.*

Plaintiffs disagree with AT & T's interpretation of Florida law. Plaintiffs contend that once an initial motion for post-judgment writ of garnishment had been filed, a judgment debtor can procure from the Clerk of Court writs of garnishment against the same entity as long as the full amount of the judgment has not been satisfied. *See* Pls.' Opp. Mem., at 3. Plaintiffs cite to no legal authority in support of their understanding of Section 77.03, which they concede is the proper statutory basis for issuing post-judgment writs of garnishment. *See id.* Furthermore, Plaintiffs have conceded that they are not entitled to a continuous writ of garnishment. *See* Tr. of Feb. 16, 1999 Hearing, at 82–83 ("Because we cannot get continuous writs of garnishment in federal court, I would ask the Court grant our motion for that second Writ of Garnishment so we can serve the telecommunications companies again with Writs of Garnishment in order to be able to satisfy the Final Judgment entered by the Court.") (statement of Roberto Martinez, Esq., co-counsel for Plaintiffs). Plaintiffs differentiate what they claim they have a right to, calling what they are seeking "a series of writs." *See* Pls.' Opp. Mem., at 4.

---

**2.** Plaintiffs filed a response the MCI Entities' Motion To Dissolve and To Quash on April 14, 1999, to which those four entities replied on April 23, 1999.

**3.** Plaintiffs filed a response to ETECSA's Motion To Dissolve on May 7, 1999.

**4.** Plaintiffs filed a response to the Motion To Dissolve of Radiocuba and Emtelcuba on May 27, 1999, to which those two entities replied on June 7, 1999.

**5.** Plaintiffs filed a partial response to AT & T's Motion For Protective Order on May 13, 1999, to which AT & T replied on May 14, 1999. Plaintiffs submitted their full opposition memorandum on May 26, 1999.

**6.** Plaintiffs submitted their response to ETECSA's Motion For Protective Order jointly with their response to AT & T's Motion on May 26, 1999.

Prior to the Clerk of the Court's issuance of the first Writs of Garnishment, this Court on December 9, 1998 had granted Plaintiffs' November 30, 1998 Motion For Garnishment After Judgment. The issuance of the first Writs of Garnishment eventually led to two Motions to Dissolve, one filed jointly by the Carriers and the other filed by ETECSA. In its March 18, 1999 Omnibus Order, this Court denied both Motions To Dissolve. Also in that Order, this Court expressly ruled on Plaintiffs' January 25, 1999 Motion For Second Writ Of Garnishment by ordering and adjudging that "Plaintiffs' Motion For Second Writ Of Garnishment After Judgment be, and the same is hereby, GRANTED IN PART. The Clerk of the Court is hereby DIRECTED to issue a Writ of Garnishment against Sprint Corporation, the only new Garnishee in Plaintiff's Motion For Second Writ compared to Plaintiff's Motion For [First] Writ." Following this ruling, Plaintiffs had the Clerk of the Court issue Writs of Garnishment on Sprint Corporation, as well as on AT & T and other Garnishees.

AT & T and Plaintiffs dispute the meaning of this Court's March 18, 1999 Omnibus Order with respect to Plaintiffs' Motion For Second Writ Of Garnishment. AT & T argues that the Court intended to grant that Motion only as to Sprint Corporation. *See* AT & T's Mot. To Quash, at 4. Plaintiffs, on the other hand, argue that the Court implied that Plaintiffs would not need to file any additional motions for writs of garnishment in order for such writs to issue. *See* Pls.' Opp. Mem., at 4–5.

 AT & T's reading of the March 18, 1999 Omnibus Order not only accurately reflects the plain meaning of this Court's language, it also comports with this Court's intent. By granting Plaintiffs' Motion For Second Writ Of Garnishment only as to Sprint Corporation, this Court did not implicitly authorize Plaintiffs to subvert Section 77.03 of the Florida Statutes by procuring Writs of Garnishment from the Clerk of the Court without prior judicial authorization. Since Plaintiffs improperly had the Clerk of the Court issue second Writs of Garnishment in the absence of a specific court order, service of these Writs must be quashed. As such, AT & T's Motion To Quash Service Of Second Writ Of Garnishment must be granted.

Given the fact that it already has received a plethora of filings from all Parties in the above-styled matters and twice heard post-judgment Oral Argument on the issues raised therein, the Court does not find it necessary to make Plaintiffs now file a Motion For Second Writ Of Garnishment. Because the Court is certain that the Plaintiffs would file such a motion immediately upon receipt of this Order, it will consider the matter at this time. Since it never expressly denied Plaintiffs' Motion For Second Writ Of Garnishment as to all Garnishees except Sprint Corporation, the Court hereby grants Plaintiffs' Motion For Second Writ Of Garnishment as to the remaining Garnishees, including AT & T, and directs the Clerk of the Court to issue second Writs of Garnishment.

### B. *MCI Entities' Motion*

In their March 30, 1999 Motion, the MCI Entities move both to dissolve the second Writs of Garnishment and to quash service thereof. The Court will address only the MCI Entities' arguments for quashing service in this section, saving its analysis of their dissolution arguments for Part II.C of this Order.

Based on substantially the same rationale as AT & T, the MCI Entities object to Plaintiffs' procurement of second Writs of Garnishment from the Clerk of the Court without prior judicial authorization. *See* MCI Entities' Mot. To Quash, at 2–7. The MCI Entities also assert that the service of the Writs was ineffective (1) against all the MCI Entities because they were not served by licensed private process servers employed by Civil Process Plus, Inc. of Miami, Florida, as directed by this Court

in its March 18, 1999 Omnibus Order, and (2) against only MCI WORLDCOM, Inc. because it was not served within the State of Florida.

For the reasons given in Part I.A of this Order, the Court will grant the MCI Entities' Motion To Quash Service Of Second Writs Of Garnishment. As such, the MCI Entities' allegations regarding the procedural defects in Plaintiffs' service of said writs are rendered moot.

As it did with respect to AT & T, the Court is granting Plaintiffs' previously-filed Motion For Second Writs Of Garnishment as to the remaining Garnishees, including the MCI Entities, and directing the Clerk of the Court to issue second Writs of Garnishment. The Court advises Plaintiffs that they must adhere to all procedural requirements regarding who may serve these Writs and where they must be served in order for the service to be effective.

## II. Motions To Dissolve Second Writs Of Garnishment

Given that the Court has quashed service of the second Writs of Garnishment, the Parties' Motions To Dissolve are all moot. The Court nevertheless will analyze the Parties' arguments, given that they most likely will be reasserted following the issuance of the second Writs of Garnishment.

### A. ETECSA's Motion

In its April 23, 1999 Motion, ETECSA moves to dissolve the second Writs of Garnishment served by Plaintiffs upon Garnishees. ETECSA argues that this Court should dissolve these Writs for the following reasons:

1. The Writs of Garnishment are null and void because their issuance and/or service was not licensed by the United States Department of Treasury, as required by the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. §§ 515.201, 515.203(e), 515.310.

2. The Final Judgment may not be satisfied by execution upon the property of ETECSA, which is a separate juridical entity not responsible for the obligations of the Republic of Cuba and/or the Cuban Air Force.

3. The Final Judgment may not be satisfied by execution upon the property of ETECSA because ETECSA was not a defendant in the underlying action and is not in privity with the judgment debtors.

4. The Writs of Garnishment violate the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610(a), because they garnish debts due ETECSA, which do not qualify as property within the United States used for commercial activity therein.

5. This Court lacks jurisdiction to issue or enforce the Writs because the garnishment of ETECSA's property violates the FSIA's prohibition against pre-judgment attachments (28 U.S.C. § 1610(d)) and Section 56.29 of the Florida Statutes. In addition, ETECSA lacks the minimum contacts with this forum required by the due process clause of the Fifth Amendment.

6. The statute providing subject matter jurisdiction for the action which gave rise to the judgment sought to be enforced by the Writs of Garnishment, 28 U.S.C. §§ 1330 and 1605(a)(7), represents an unconstitutional delegation of Congress's responsibilities because it provides subject matter jurisdiction only for actions against foreign states designated by the Secretary of State.

7. The Writs of Garnishment violate Florida procedure and due process of law because Plaintiffs have not posted a bond and have not demonstrated probability of success on the merits.

ETECSA's Mot. To Dissolve, at 1–3.

In their response, Plaintiffs state that ETECSA's Motion should be denied because all the arguments raised therein have been expressly rejected by this Court in its March 18, 1999 Omnibus Order. *See* Pls.' Opp. Mem. at 1–2.

During the June 3, 1999 Oral Argument on these Motions, ETECSA's counsel expressly conceded Plaintiffs' argument in its introduction to the Court:

> With respect to that motion [to dissolve the second Writ of Garnishment], Your Honor, it's made to preserve the issues for appeal. Your Honor has addressed all the points we made in the Omnibus Order of March 18....As to our objections to the second writ, we think everything that we have raised now has been raised before and has been decided by Your Honor. Obviously, there's no need or rationale to relitigate it.

Tr. of June 3, 1999 Hearing, at 20. As Plaintiffs and ETECSA mutually understand, this Court already has ruled upon the arguments raised in ETECSA's Motion To Dissolve. The Court found those arguments unavailing in its March 18, 1999 Omnibus Order. As such, if it were presently pending before this Court, ETECSA's Motion To Dissolve would be denied.

### B. *Radiocuba and Emtelcuba's Motion*

In their May 10, 1999 Motion, Radiocuba and Emtelcuba also move to dissolve the second Writs of Garnishment served by Plaintiffs upon Garnishees. Like AT & T and the MCI Entities, Radiocuba and Emtelcuba assert that the issuance of the second Writs of Garnishment was improper because they was not issued pursuant to court order. *See* Radiocuba & Emtelcuba's Mot. To Dissolve, at 3. And like ETECSA, Radiocuba and Emtelcuba put forth a list of general arguments for why this Court should dissolve the second Writs of Garnishment, including the following: (1) the issuance and/or service of the Writs was not licenced pursuant to the CACR, (2) the property of Emtelcuba and Radiocuba may not be garnished in satisfaction of the Final Judgment entered against the Republic of Cuba and the Cuban Air Force; (3) the underlying lawsuit was founded on an unconstitutional delegation of Congress' responsibility to determine subject matter jurisdiction; (4) the issuance of the Writs violates Florida statutes and due process of law; (5) this Court has no jurisdiction over Emtelcuba's funds or property owed to it, since the FSIA prohibits prejudgment interest; (6) this Court has no jurisdiction over Emtelcuba's funds or debts due it, since Florida procedure was not followed; (7) the property sought to be garnished is immune from execution under the FSIA; and (8) Emtelcuba's property and debts due it are not subject to garnishment because Emtelcuba and Radiocuba lack the constitutionally-required minimum contacts with the State of Florida and the United States. *See id.* at 3–4.

The Court already has ruled that the second Writs of Garnishment were improperly issued without this Court's Order. The argument of Radiocuba and Emtelcuba highlighting this defect therefore has been dealt with by the Court. The other eight arguments, put forth by the same counsel which represents ETECSA, are virtually identical to those presented to this Court by ETECSA in both of its Motions To Dissolve. The Court rejected these arguments in its March 18, 1999 Omnibus Order. In their memorandum of law, Radiocuba and Emtelcuba make clear their awareness of this Court's prior determination and that they reassert these arguments only in order to preserve them for appeal. As such, to the extent that it relies on these previously considered and rejected arguments, the Motion To Dissolve of Radiocuba and Emtelcuba would be denied if it were presently pending before the Court.

Radiocuba and Emtelcuba also make specific arguments relating to three items identified by AT & T in its Answer to the second Writ of Garnishment: (1) a bank account at a branch of Chase Manhattan Bank in New York titled "Empresa de Telecommunicationes,"(2) a bank account at a branch of Chase Manhattan Bank in New York titled "AT & T Long Lines," identified as representing payments due Emtelcuba by the Cuban American Telephone and Telegraph Company ("Cuban AT & T"), and (3) a debt owed by AT & T

to Emtelcuba carried on AT & T's books, which are maintained in its headquarters in New Jersey. *See id.* at 2–3. With respect to all three of these items, Radiocuba and Emtelcuba maintain that this Court has no jurisdiction over the account/debt, and that venue is improper in this federal district for garnishment proceedings concerning the account/debt. *See id.* In addition, with respect only to the two bank accounts, Radiocuba and Emtelcuba assert that they are neither debts owed by AT & T to Emtelcuba nor property of Emtelcuba in the possession or control of AT & T. *See id.*

Given that the Motion to Dissolve by Radiocuba and Emtelcuba no longer is properly before the Court, the Court will not consider these specific arguments at this time. The Court finds it particularly appropriate to exercise judicial restraint in light of the Motion For Leave To Amend Answer To Plaintiffs' Writ Of Garnishment recently filed by Chase Manhattan Corporation and granted by separate Order dated June 16, 1999. Chase Manhattan Corporation's Amended Answer may dispose of the alleged jurisdictional and venue problems concerning the accounts; to the extent that it does not, Radiocuba and Emtelcuba may raise the same arguments if and when they file a Motion To Dissolve the second Writs of Garnishment specifically authorized by this Order.

### C. *MCI Entities' Motion*

Only one of the MCI Entities' arguments remains before the Court: their assertion that any remaining amounts held by the MCI Entities for the benefit of ETECSA must first be reduced by Plaintiffs' set-off claims for ETECSA's wrongful termination of telecommunications service between the United States and Cuba. *See* MCI Entities' Mot. To Dissolve, at 7–8. In their Answer to the second Writ of Garnishment, AT & T also assert this alleged right. *See* AT & T's Answer, at ¶ 18.

At this time, the Court will defer consideration of the potential set-off rights the MCI Entities and AT & T may have due to ETECSA's allegedly wrongful termination of telecommunications service between the United States and Cuba. If and when they assert this argument with respect to the second Writs of Garnishment specifically authorized by this Order, the MCI Entities and AT & T should fully inform the Court of the contractual provisions in the operating agreements that are relevant to a determination of the effect of ETECSA's alleged breach, especially any provisions that support their claims for set-off.

### III. Motions For Protective Order

### A. *AT & T's Motion*

In an Order dated March 25, 1999, this Court granted AT & T's request for a stay pending appeal, conditioned on AT & T posting a *supersedeas* bond in the amount of $4,564,031.02, representing the amount of the judgment entered against AT & T in the March 18, 1999 Omnibus Order, plus interest. AT & T complied with that Order and posted the required bond with the Court on March 29, 1999.

Notwithstanding this Court's Order granting a stay and AT & T's posting of the required bond, Plaintiffs served on AT & T a Notice of 30(b)(6) Deposition, seeking to depose AT & T on May 21, 1999 in furtherance of their efforts to garnish ETECSA's assets to satisfy the Final Judgment entered by this Court on December 17, 1997. In that Notice, Plaintiffs request testimony as to the following issues:

1. The Operating Agreement between AT & T and ETECSA, dated September 30, 1994, including all amendments and assignments related thereto.

2. ETECSA's breach of the Operating Agreement and amounts due AT & T as a result of such breach, for which AT & T has claimed a right of set-off from the funds Plaintiffs have sought to garnish.

3. Information regarding the accounts blocked by the federal government (the "blocked accounts"), including the identity, nature and amount of funds in such accounts, and payments owed by AT &

T to ETECSA, which are the assets Plaintiffs have sought to attach.

4. The restrictions placed by the Office of Foreign Assets Control ("OFAC") on the blocked accounts and payments made or monies owed by AT & T to ETECSA.

5. The relationship between Cuba and ETECSA.

6. The relationship between Cuba and EMTELCUBA.

7. Negotiations, discussions and communications, including those with Cuba and the federal government which relate to the assignment of EMTELCUBA's rights and obligations under the Operating Agreement to ETECSA.

8. The licenses issued by OFAC authorizing payments by AT & T to ETEC-SA.

Notice of 30(b)(6) Dep. of AT & T Corp., Apr. 30, 1999, at Attachment A. AT & T avers that some of the testimony requested by Plaintiffs relates directly to issues now on appeal. *See* AT & T's Mot. for Protective Order, at 5.

AT & T moves this Court to stay all discovery in the above-styled matters—pending disposition of their appeal in the Eleventh Circuit Court of Appeals—on three grounds. *See id.* at 6. First, AT & T contends that binding law of this Circuit prohibits the conduct of any discovery subsequent to the issuance of a stay and the posting of a *supersedeas* bond. *See id., citing Fehlhaber v. Fehlhaber,* 664 F.2d 260 (11th Cir.1981) (interpreting Florida law, as mandated by Federal Rule of Civil Procedure 69(a)). Second, AT & T urges this Court to stay discovery on efficiency grounds, proffering that such discovery may be unnecessary if the Eleventh Circuit reverses this Court's March 18, 1999 Omnibus Order. Finally, AT & T contends that issuance of a protective order staying discovery pending disposition of the appeal would not prejudice Plaintiffs, given that AT & T has posted a *supersedeas* bond to preserve the status quo and ensure payment on Plaintiffs' judgment

against AT & T upon affirmance or dismissal of the appeal.

Plaintiffs dispute AT & T's position, proffering that they are entitled to discovery in aid of execution until they garnish the funds necessary to satisfy the Final Judgment of $187 million entered by this Court on December 17, 1997. *See* Pls.' Opp. Mem., at 3–4. Plaintiffs reason further that the Motions for Protective Order would be appropriate only if AT & T (and presumably the other Garnishees) and/or ETECSA were to post a *supersedeas* bond the in the full amount of that judgment; thus far, only $6.7 million has been bonded. *See id.* Plaintiffs state that the *Fehlhaber* precedent relied upon by AT & T stands for their proposition that a judgment creditor may obtain post-judgment discovery until the full amount of its judgment is secured. *See id., citing Fehlhaber,* 664 F.2d at 263.

Plaintiffs argue that, contrary to AT & T's representations, they are not seeking to take further discovery regarding the amounts already garnished and bonded while on appeal. *See id.* Plaintiffs state that they are seeking discovery directed at identifying additional funds held by AT & T and the other telecommunications carriers which may be subject to garnishment. *See id.* Indeed Plaintiffs aver that the discovery requested in their Rule 30 Notice stems from the factual assertions made by AT & T and the other Garnishees in their Answers to Plaintiffs' second Writs of Garnishment. Among the issues suggested by the Garnishees' Answers on which Plaintiff now seeks discovery are the following:

1. AT & T's previously undisclosed balance in excess of $50 million on deposit at Chase Manhattan Bank in New York.

2. AT & T's previously undisclosed account balance of $6,813,479, characterized as monies owed to the Republic of Cuba for taxes by Cuban AT & T, a wholly-owned subsidiary of AT & T.

3. AT & T's previously undisclosed accrued liability in the amount of $1,334,-

000, representing telecommunication settlement payments due EMTELCUBA for the period October 1992 through October 1994.

4. AT & T's previously undisclosed agreement between EMTELCUBA and ETECSA, assigning to ETECSA all the obligations deriving from AT & T's operating agreement to provide telecommunications service to Cuba.

5. AT & T's continued assertion that ETECSA is a separate corporation completely independent of the Republic of Cuba.

6. AT & T's previously undisclosed assertion that ETECSA has breached its operating agreement such that AT & T has a right of set-off as to all the amounts owed by AT & T to ETECSA.

*Id.* at 5–7. Plaintiffs argue that they are entitled to take discovery on the aforementioned issues given AT & T's failure to raise them at the time this Court undertook its consideration of Plaintiffs' first Writs of Garnishment.

■ Given the new information provided to Plaintiffs in AT & T's Answer to the second Writ of Garnishment (which presumably once again will be provided when AT & T re-submits its Answer, given that the Court specifically has authorized the issuance of second Writs of Garnishment), the Court finds that Plaintiffs must be allowed to take discovery directed at identifying additional funds held by AT & T and the other telecommunications carriers which may be subject to garnishment. Since the full amount of the final judgment has not been satisfied, Plaintiffs may continue to seek leave of court to serve writs of garnishment. To the extent new information arises as a result, Plaintiffs are entitled to take discovery as to that information. As such, AT & T's Motion For Protective Order must be denied.

The Court expresses great concern over the fact that its determinations regarding many discoverable issues are now before the Eleventh Circuit. The Court does not believe that Plaintiffs are entitled to take discovery on matters that are currently on appeal. The Court, however, does not find it necessary at this time excrutiatingly to dictate exactly on what Plaintiffs may take deposition testimony. Instead, the Court will allow Plaintiffs to take deposition testimony with the instruction that they should seek discovery directed only at identifying additional funds held by the Garnishees, and should not seek further discovery on matters decided by this Court in its March 18, 1999 Omnibus Order and currently pending before the Eleventh Circuit. The Parties are equally responsible for adhering to this instruction, and should act in good faith throughout the discovery process.

### B. *ETECSA's Motion*

On March 29, 1999, ETECSA filed a Notice of Appeal, seeking review of this Court's March 18, 1999 Order, which garnished assets owed to ETECSA in aid of execution of the Final Judgment entered by this Court on December 17, 1997.

Plaintiffs served on ETECSA a Notice of 30(b)(6) Deposition, seeking to depose ETECSA on May 21, 1999 in furtherance of their efforts to garnish assets owed to it in order to collect on the Final Judgment entered by this Court on December 17, 1997. In that Notice, Plaintiffs request testimony on the following issues:

1. The telecommunications operating agreements, and any amendments and assignments related thereto, with AT & T Corp., AT & T of Puerto Rico, Inc., IDB Worldcom Services, Inc., MCI International, Inc., MCI Worldcom, Inc., Wiltel, Inc., Telefonica Larga Distancia de Puerto Rico, Inc., and Global One (including Sprint Corporation and Sprint Communications Company L.P.), (hereinafter "the telecommunications carriers").

2. The current dispute between ETECSA and the telecommunications carriers relating to an alleged breach of the telecommunications operating agreements.

3. The amounts due to ETECSA by the telecommunications carriers.

4. The relationship between ETECSA and the Government of Cuba.

5. The relationship between Empresa de Telecomunicaciones de Cuba ("EMTELCUBA") and the Government of Cuba.

6. The relationship between ETECSA and EMTELCUBA.

7. The assignment to ETECSA of EMTELCUBA's rights and obligations pursuant to the agreements with the telecommunications carriers.

Notice of 30(b)(6) Dep. of ETECSA, Apr. 30, 1999, at Attachment A. ETECSA avers that some of the testimony requested by Plaintiffs relates directly to issues now on appeal. *See* ETECSA's Mot. for Protective Order, at 6.

ETECSA adopts AT & T's arguments in support of its contention that all discovery in the above-styled matters should be stayed pending disposition of the appeal by the Eleventh Circuit. *See id.* at 4–5. In addition, ETECSA suggests that, with respect to Plaintiffs' requests concerning Emtelcuba, ETECSA is merely a third-party witness to any proceedings seeking to garnish funds due Emtelcuba and therefore may not be subject to depositions merely by service of a Rule 30 Notice. *See id.* at 6. ETECSA also argues that it must be afforded greater notice than that afforded by Plaintiffs in their Rule 30 Notice because its offices and officers are located in Cuba, and the Department of State requires at least twenty-one (21) working days between a visa application by a Cuban national and the issuance of a visa for entry into the United States. *See id.* at 6–7.

Plaintiffs maintain that the discovery requested in their Rule 30 Notice of ETECSA stems from recently-received discovery from Chase Manhattan Corporation, as well as information contained in ETECSA's Motion To Dissolve Second Writs Of Garnishment. Among the issues suggested by these documents on which Plaintiff now seeks discovery are the following:

1. Chase Manhattan Bank's production of documents evidencing at least $3,360,-504.86 being held in an account explicitly entitled "A/C of Cuba and its Agencies," held in trust by the law firm representing ETECSA in the above-styled matters.

2. ETECSA's production of declarations by Dr. George Andress Antunez Couselo and others purporting to assert that ETECSA is wholly independent of the Cuban government.

Pls.' Opp. Mem., at 6–7. Plaintiffs argue that they are entitled to take discovery on these issues given that they were unaware of them at the time this Court undertook its consideration of Plaintiffs' first Writs of Garnishment.

For essentially the reasons given in Part III.A of this Order, the Court finds that ETECSA's Motion For Protective Order must be denied. Plaintiffs are entitled to take discovery on issues previously unknown to them, provided that they do not unduly interfere with issues pending disposition by the Eleventh Circuit. With respect to ETECSA's concern over the scheduling of its deposition, Plaintiffs have expressed their willingness to resolve scheduling conflicts presented by individual deposition notices, including those imposed by travel restrictions and visa requirements. *See* Pls.' Opp. Mem., at 12–13. The Court assumes that Plaintiffs will make this and any other good faith concessions required by law and the dictates of this Order.

### IV. Rulings of Court

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the Motion To Quash Service Of Second Writ Of Garnishment filed by AT & T Corp. on April 7, 1999 be, and the same is hereby, GRANTED. The Clerk of the Court is hereby DIRECTED to issue a second writ of garnishment against AT & T Corp., as set forth in Plaintiffs' January 25, 1999 Motion For Second Writs Of Garnishment. It is further

ORDERED and ADJUDGED that the Motion To Quash Service of Second Writs

of Garnishment filed by MCI WORLD-COM, Inc., MCI International, Inc., IDB WORLDCOM Services, Inc., and Wiltel, Inc. on March 30, 1999 be, and the same is hereby, GRANTED. The Clerk of the Court is hereby DIRECTED to issue second writs of garnishment against MCI WORLDCOM, Inc., MCI International, Inc., IDB WORLDCOM Services, Inc., and Wiltel, Inc., as set forth in Plaintiffs' January 25, 1999 Motion For Second Writs Of Garnishment. It is further

ORDERED and ADJUDGED that the Motion To Dissolve Writs Of Garnishment filed by Empresa de Telecommunicaciones, S.A. on April 23, 1999 be, and the same is hereby, DENIED AS MOOT. It is further

ORDERED and ADJUDGED that the Motion To Dissolve Second Writ Of Garnishment filed by Empresa de Radiocomunicacion y Difusion de Cuba and Empresa de Telecomunicaciones Internacionales on May 10, 1999 be, and the same is hereby, DENIED AS MOOT. It is further

ORDERED and ADJUDGED that the Motion To Dissolve Second Writs Of Garnishment filed by MCI WORLDCOM, Inc., MCI International, Inc., IDB WORLDCOM Services, Inc., and Wiltel, Inc. on March 30, 1999, be, and the same is hereby, DENIED AS MOOT. It is further

ORDERED and ADJUDGED that the Motion For Protective Order filed by AT & T Corp. on May 12, 1999 be, and the same is hereby, DENIED. It is further

ORDERED and ADJUDGED that the Motion For Protective Order filed by Empresa de Telecommunicaciones, S.A. on May 17, 1999 be, and the same is hereby, DENIED.

DONE and ORDERED at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 16th day of June, 1999.