782 So.2d 478 (2001)
WINDSOR-THOMAS GROUP, INC., Appellant,
v.
Patricia PARKER and American General Life Insurance Company, Appellees.
No. 2D99-4364.
District Court of Appeal of Florida, Second District.
March 23, 2001.
*479 Robert L. McDonald, Jr., of Cramer, Haber & McDonald, P.A., Tampa, for Appellant.
No appearance for Appellee Patricia Parker.
Robert A. Freyer of Shutts & Bowen, LLP, Orlando, for Appellee American General Life Insurance Company.
ALTENBERND, Judge.
Windsor-Thomas Group, Inc. ("Windsor-Thomas"), appeals an order dissolving a writ of garnishment directed to American General Life Insurance Company as the issuer of an annuity for the benefit of Patricia Parker. We affirm. In Florida, the proceeds of annuity contracts "shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor." § 222.14, Fla.Stat. (1997). At least in cases where the debtor/defendant is not the owner of the annuity, we conclude that either the owner or the issuer of the annuity can raise this prohibition. This is true even if the debtor/defendant does not raise it in a motion to dissolve the writ. We certify conflict with State Farm Life Insurance Co. v. Florida Asset Financing Corp., 25 Fla. L. Weekly D1546, ___ So.2d ___, 2000 WL 827161 (Fla. 4th DCA June 28, 2000), a Fourth District case that held a garnishee lacked standing to raise this statute as a defense.
*480 This is the second time this court has considered the propriety of a "Fund Acquisition Agreement" that attempts to obtain the assignment of an annuity benefit not subject to assignment or encumbrance. See First Colony Life Ins. Co. v. Sun State Capital Funding, Inc., 730 So.2d 735 (Fla. 2d DCA 1999). Coincidentally, both First Colony and this case involve transactions to recover benefits payable to the same person, Patricia Parker. As in First Colony, no one has appeared on Ms. Parker's behalf, although her attorney was served with the notice of appeal.
As explained in First Colony, Ms. Parker filed a lawsuit seeking damages related to the death of her husband. Ms. Parker and the defendant to that action settled the lawsuit using a structured settlement agreement that required the defendant's insurance company, Shelby Insurance Company, to pay Ms. Parker scheduled payments. The agreement allowed Shelby Insurance Company to make a qualified assignment of this obligation to American General Annuity Service Corporation (AGASC).[1] Shelby Insurance Company made this qualified assignment, and AGASC purchased from American General Life Insurance Company an annuity structured to make the scheduled payments. Thereafter, Ms. Parker sought to assign a portion of these benefits to Windsor-Thomas in exchange for an immediate lump sum payment. Because the annuity contains a clause prohibiting such assignment, the transaction was structured in an attempt to achieve the equivalent of an assignment without the use of this term.
The transaction in this case is only slightly different than that described in First Colony. In this case, the annuity issued by American General Life Insurance and owned by AGASC required three payments to Ms. Parker, with the first payment of $20,000 due to her on May 1, 1999. Ms. Parker signed a "Fund Acquisition Agreement" with Windsor-Thomas dated November 20, 1997. Windsor-Thomas paid Ms. Parker $8,400, and Ms. Parker agreed to pay Windsor-Thomas $20,000 on May 1, 1999.[2] Her promise was "secured" by the anticipated payment from the annuity. Obviously, Ms. Parker did not own a "fund" that Windsor-Thomas could "acquire." From a functional viewpoint, this agreement is a secured promissory note with an annual interest rate of approximately 100 percent.[3]
Like the transaction in First Colony, this Fund Acquisition Agreement required Ms. Parker to obtain a payment or performance bond. The Agreement provided that her failure to do so (in this case within twenty-five days) would constitute a default. Upon default, the entire $20,000 would become due and payable, and the agreement allowed for "specific performance." *481 The agreement required that Alan Gonzalez, Esquire, receive a copy of any notices required to be sent to Ms. Parker. It is unclear whether Mr. Gonzalez represented Ms. Parker in the execution of the agreement, but he was her attorney in all subsequent legal proceedings. Although no document specifically acknowledged that all parties intended for Ms. Parker to default on this contract, the totality of the record suggests that the parties entered into this agreement with a preestablished plan to allow a default and thereby transform the obligation into a judgment that might be collected through garnishment or attachment.
On January 6, 1998, about six weeks after giving Ms. Parker the $8,400, Windsor-Thomas sued Ms. Parker seeking specific performance or damages for the breach of the Fund Acquisition Agreement, alleging Ms. Parker failed to obtain the required bond. At precisely the same time that Windsor-Thomas filed its lawsuit, Mr. Gonzalez filed three documents on behalf of Ms. Parker. The first two, dated December 23, 1997, consisted of an acceptance of service and an answer that admitted the allegations of the complaint and consented to "the entry of a judgment for all the relief requested in the complaint without further notice." The third document was a "Joint Stipulation for Entry of Judgment" agreeing, without hearing or notice, to the entry of a judgment in the amount of $20,000, with no prejudgment interest. A final judgment was entered on January 20, 1998, that tracked the language of the joint stipulation, including a provision that enjoined Ms. Parker from rescinding her agreement to change the beneficiary of the annuity to Windsor-Thomas. The judgment provides that interest at the statutory rate accrues on the amount due. As a result, the payment from the annuity will be insufficient to satisfy this judgment because of the interest that accrued on the judgment between January 1998 and May 1999.[4]
On February 10, 1998, upon the motion of Windsor-Thomas, the trial court issued a writ of garnishment directed to American General Life Insurance Company. American General Life Insurance Company filed a motion to quash the writ. It pointed out that AGASC owns the annuity. Under the terms of the annuity, AGASC, as the owner of the annuity, is entitled to receive the benefits. The owner possesses all of the rights under the annuity, including the right to determine and change the beneficiary. As explained in the "Uniform Qualified Assignment," which is appended to Windsor-Thomas's complaint, AGASC is the party that has assumed the liability of Shelby Insurance Company to pay Ms. Parker in May 1999. Technically, American General Life Insurance Company, a separate corporation, is simply a guarantor of AGASC's obligation. Thus, it is doubtful that this legal action could proceed without AGASC as a party.
American General Life Insurance Company also argued in its motion to quash the writ that Windsor-Thomas could not garnish future periodic payments, that the annuity funds were not subject to garnishment pursuant to section 222.14, Florida Statutes (1997), and that American General Life Insurance Company had not received written notice of the assignment as required in the annuity contract.
On April 9, 1998, Mr. Gonzalez filed another document on Ms. Parker's behalf that waived service of the garnishee's answer *482 and consented to entry of a judgment in favor of Windsor-Thomas against American General without further notice or hearing.
After a hearing on these issues and the filing of memoranda of law, the trial court initially denied the motion to quash and entered a final judgment of garnishment on August 10, 1998. Thereafter, however, American General Life Insurance Company filed a timely motion for rehearing. While this motion was pending, we issued our opinion in First Colony, 730 So.2d 735. Based upon that precedent, the trial court granted rehearing and ultimately dissolved the writ of garnishment. In its final order, the trial court emphasized that its ruling was based solely on First Colony.
Although our opinion in First Colony certainly questioned the propriety and ethics of this type of transaction, we merely held that the case presented unresolved questions of fact, and thus the trial court had erred in resolving the matter without an evidentiary hearing. Id. The case was remanded to the trial court for such an evidentiary hearing. Id. Thus First Colony does not provide precedent as to whether the writ of garnishment in this case is appropriate.
We conclude, however, that the trial judge's decision to dissolve the writ of garnishment in this case was proper on a separate legal basis. See In re Estate of Yohn, 238 So.2d 290 (Fla.1970) (holding appellate court may affirm trial court's decision based upon erroneous reasoning where different legal basis supports affirmance). This record is more extensive than the record in First Colony. It contains the annuity contract and the writ. Moreover, the pleadings and arguments below specifically questioned whether these annuity payments were subject to garnishment.[5] We hold that they are not subject to garnishment, and that American General Life Insurance Company has standing to raise this issue. Therefore, we affirm the order dissolving the writ, notwithstanding our disagreement with the trial court's rationale.
In this appeal, Windsor-Thomas has conceded that section 222.14, Florida Statutes (1997), prohibits the garnishment or attachment of these benefits. See also LeCroy v. McCollam (In re McCollam), 612 So.2d 572 (Fla.1993). Nevertheless, Windsor-Thomas argues that this is an exemption personal to Ms. Parker, and American General has no standing to raise this issue as a defense to garnishment. Windsor-Thomas relies, in great part, upon the Fourth District case of State Farm Life Insurance Co. v. Florida Asset Financing Corp., 25 Fla. L. Weekly D1546, ___ So.2d ___, 2000 WL 827161 (Fla. 4th DCA June 28, 2000).
In Florida Asset, the Fourth District reviewed a transaction similar to the ones in this case and First Colony and concluded that the beneficiary of the annuity was "the one who was injured and the `only person who needs the protection of the statute.'" Id. (citing In re Benedict, 88 B.R. 390, 393 (Bankr.M.D.Fla.1988)). Thus, although the issuer of the annuity in Florida Asset had standing to challenge the writ itself, the court held it did not have standing to assert the statutory protections. *483 We disagree with this analysis and certify conflict with Florida Asset.
The statutory protection for this type of annuity is not comparable to a homestead exemption or an exemption for head of household wages. See, e.g., art. 10, § 1, Fla. Const.; § 222.11, Fla.Stat. (1999); Orange Brevard Plumbing & Heating Co. v. LaCroix, 137 So.2d 201 (Fla.1962); Rudd v. First Union Nat'l Bank of Fla., 761 So.2d 1189 (Fla. 4th DCA 2000). Ms. Parker, as a debtor, is not attempting to claim an exemption for property owned by her. In order to receive certain tax benefits, Ms. Parker does not own this annuity and does not control the beneficiary designation. The statutory protection for the proceeds of an annuity assures the owner and issuer of the annuity that they can fully comply with federal law and that they can minimize the price of the annuity because it will not be an asset subjecting them to constant lawsuits. Section 222.14 broadly states that the proceeds of an annuity "shall not in any case be liable to... garnishment." Windsor-Thomas's pleadings, on their face, establish that no writ of garnishment could be issued without violating this legislative directive. This calls into question whether the trial court should have issued the original writ of garnishment based upon Windsor-Thomas's motion. Windsor-Thomas may ultimately be able to obtain payment from Ms. Parker, but section 222.14 bars the judiciary from assisting Windsor-Thomas in its efforts to obtain payment directly from the issuer or owner of the annuity.
In addition, once the trial court issued the writ, American General Life Insurance could raise section 222.14 as a defense to the garnishment. As we pointed out in First Colony, these structured settlements enjoy certain tax benefits that might be compromised by this transaction. First Colony, 730 So.2d at 736; 26 U.S.C. § 130 (1988 & Supp.1999). See also Grieve v. Gen. Am. Life Ins. Co., 58 F.Supp.2d 319 (D.Vt.1999). These implications, and American General Life Insurance Company's potential liability should it make a payment to a garnishor that conflicts with directions from the annuity's owner, give American General Life Insurance Company an interest sufficient to provide it standing to assert this statute's protection from garnishment. Other state courts have reached this same conclusion. See Walker v. Walker, 303 Ark. 34, 791 S.W.2d 710 (1990); J.G. Wentworth v. Jones, 28 S.W.3d 309 (Ky.Ct.App.2000). Permitting the issuer or the owner of the annuity to assert this protection furthers the state of Florida's interest in its exemption laws "to the end that owners of exempt property and their families shall not be reduced to absolute destitution, thus becoming a charge upon the public." Slatcoff v. Dezen, 76 So.2d 792, 794 (Fla.1955).
Despite American General Life Insurance Company's interest, Windsor-Thomas argues that the garnishment statute precludes anyone but the debtor from obtaining a dissolution of the writ of garnishment. Section 77.07(1), Florida Statutes (1997), permits a defendant to move to dissolve the writ, apparently under any legal basis, and section 77.07(2) permits "any other person having an ownership interest in the property" to seek dissolution on the basis that "any allegation in plaintiff's motion for writ is untrue." These provisions, however, do not prohibit the garnishee from raising defenses to the writ, including the protection from garnishment provided in section 222.14.
The garnishment statute anticipates that the garnishee's answer to the writ may raise issues requiring a trial. See § 77.08, Fla.Stat. (1997). Florida law recognizes certain defenses the garnishee may raise, such as defenses the garnishee may have *484 had in a suit by the debtor and claims for setoff. See Flynn-Harris-Bullard Co. v. Hampton, 70 Fla. 231, 70 So. 385 (1915); Bank of Winter Park v. Resolution Trust Corp., 633 So.2d 53 (Fla. 5th DCA 1994). See also United Presidential Life Ins. Co. v. King, 361 So.2d 710, 712 (Fla.1978) (noting, "The garnishee may respond to the allegations and assert any defenses available."). Moreover, section 77.07(4) allows the issues raised in a defendant's motion for dissolution to be tried together with the issues raised by the pleadings. As a result, nothing in section 77.07 prohibits American General from filing a motion or answer arguing that the writ was issued in violation of section 222.14.[6] Indeed, to deny American General the opportunity to object to garnishment of the annuity benefits might violate principles of due process if American General could suffer adverse financial consequences as a result of the garnishment.
Accordingly, we affirm the order dissolving the writ of garnishment. We certify conflict with State Farm Life Insurance Co. v. Florida Asset Financing Corp., 25 Fla. L. Weekly D1546, ___ So.2d ___, 2000 WL 827161 (Fla. 4th DCA June 28, 2000).
PARKER, A.C.J., and SALCINES, J., Concur.
NOTES
[1] The annuity in this case was required by a separate provision of the same settlement agreement discussed in First Colony Life Insurance Co. v. Sun State Capital Funding, Inc., 730 So.2d 735 (Fla. 2d DCA 1999).
[2] Because Ms. Parker sought to assign only one payment to Windsor-Thomas, this case does not involve a "continuing" writ of garnishment, an issue that was raised in First Colony.
[3] Reputable plaintiff's attorneys often attempt to settle cases with structured settlements. Not only do these settlements frequently net more money for the client, but they also assure that an unsophisticated client, inexperienced in investing large sums, does not imprudently spend settlement funds today that are needed to cover future expenses. Ms. Parker's business transaction with Windsor-Thomas is a good example of the type of transaction that reputable attorneys seek to avoid through the use of a structured settlement.
[4] We wonder whether Windsor-Thomas and Ms. Parker's attorney discussed with her this additional expense, or the potential damage to her credit record that could result by the recorded judgment.
[5] Although the parties' briefs on appeal addressed, in part, the propriety of garnishing these funds, we ordered the parties to supplement their briefs to specifically address whether American General Life Insurance Company had standing to assert the provisions of section 222.14, Florida Statutes (1997), and whether that statute prohibited the garnishment of these payments. This allowed each party an opportunity to argue this issue adequately.
[6] We note that other jurisdictions specifically allow a garnishee to raise an exemption in a garnishment action. See Bour v. Johnson, 80 Wash.App. 643, 910 P.2d 548 (Wash.Ct.App. 1996); E. Lithographing Corp. v. Neville, 203 Pa.Super. 21, 198 A.2d 391 (1964). In addition, at least one jurisdiction imposes a duty on the garnishee to raise any exemptions, or to face liability from the debtor. See South-west Bank & Trust Co. v. Calmark Asset Mgmt., Inc., 694 S.W.2d 199 (Tex.Ct.App. 1985).