[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10241
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 6, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-20863-CV-KMM

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,


ERNESTO APOSTOLO,
MARIA ELENA CASTILLO DE APOSTOLO,
MARIA DE CASTILLO, deceased,

Claimants-Appellants,

versus

PENSION FUND OF AMERICA L.C.,
PFA ASSURANCE GROUP, LTD,
PFA INTERNATIONAL, LTD.,
CLAREN TPF, LLC,
LUIS M. CORNIDE,
THOMAS G. SCHULTZ,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 6, 2010)

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Ernesto Apostolo appeals the district court's order summarily disposing of his claim against the receivership assets in a securities fraud case. He also appeals the district court's order denying his motion for reconsideration.

I.

On March 28, 2005, the Securities and Exchange Commission filed an enforcement action against the Pension Fund of America, LC, and entities affiliated with it (collectively "the Pension Fund"). The complaint also named the Pension Fund's two principals as defendants. The SEC sought to enjoin the defendants from continuing to defraud investors through the sale of "retirement trust plans" issued by the Pension Fund in violation of the anti-fraud provisions of federal securities laws.

The SEC requested that the district court appoint a receiver "with the power, duty, and authority to . . . marshal and safeguard all of the assets of [the Pension

2

Fund,] and take whatever actions are necessary for the protection of the investors." After concluding that the SEC had made a prima facie case that the defendants violated federal securities laws, the district court granted the SEC's request and appointed Thomas Schultz to serve as receiver for the Pension Fund.

On May 21, 2007, the district court entered a final judgment against each of the defendants named in the SEC's complaint. Those judgments called for disgorgement of the profits gained by the defendants as a result of the conduct alleged in the complaint. The judgments ordered the disgorged funds to be paid to the receiver. Ten days later, the district court administratively closed the SEC enforcement action because final judgment had been entered as to each of the named defendants.

The district court later entered several final orders approving settlement agreements in class action suits related to the underlying SEC enforcement action. Those orders defined "settlement class members" to exclude "all employees, agents and/or brokers (and their immediate family members) who sold or solicited the sale of investments in Pension Fund." Schultz, as receiver, was in charge of distributing the settlement funds to the authorized claimants. Apostolo, a former sales agent and Regional Director for Pension Fund, was not named a party in either the SEC enforcement action or the related class action.

3

The district court approved a claims procedure for Schultz to follow in distributing the Pension Fund receivership estate. That procedure called for claimants to file a proof of claim form, which provided that "any person or entity submitting this proof of claim form shall submit to the exclusive jurisdiction of the United States District Court for the Southern District of Florida." The form also stated that the claimant waived any right to have his claim decided by a jury trial. The approved claims procedure called for the district court to resolve in a summary proceeding any dispute between a claimant and the receiver.

Apostolo filed pro se a proof of claim form with the receiver, claiming that the Pension Fund owed him $8,640,000 in unpaid commissions. Apostolo attached to his claim form a letter in which he stated that, while serving as a Regional Director for the Pension Fund, he "was constantly traveling to and from Latin America recruiting, promoting, [and] marketing Pension Fund products."

Schultz, acting as receiver, objected to Apostolo's claim because the fact that Apostolo had sold investments in the Pension Fund put him outside the definition of a "settlement class member." Schultz noted that the district court had consistently enforced the exclusion from the settlement class of agents and brokers who sold or solicited the sale of the Pension Fund investments. He moved for a summary disposition disallowing Apostolo's claim.

4

The district court agreed with Schultz, noting that "as a Pension Fund sales agent and/or regional director, Apostolo is not a member of the Settlement Class and has no claim as to Receivership assets." In an order filed on October 22, 2008, the district court granted the motion for summary disposition and dismissed Apostolo's claim with prejudice. Six days later, Apostolo filed a motion for reconsideration, and on December 4, 2008, the district court entered an order denying that motion for reconsideration. On January 6, 2009, Apostolo filed pro se a notice of appeal seeking review of the district court's orders granting the receiver's motion for summary disposition of his claim and denying his motion for reconsideration.

## II.

Shultz, as receiver, has filed a motion to dismiss this appeal for lack of jurisdiction, arguing that Apostolo's notice of appeal was not timely filed. The timeliness of a notice of appeal is of great importance because "[i]f the notice of appeal is not timely filed [we are] without jurisdiction to hear the appeal." Advanced Estimating System, Inc. v. Riney, 77 F.3d 1322, 1323 (11th Cir. 1996) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 61, 103 S. Ct. 400, 403 (1982)).

Federal Rule of Appellate Procedure 4 governs the time for filing a notice of

5

appeal.  It provides that, generally, a notice of appeal in a civil case must be filed "within 30 days after the judgment or order appealed from is entered."  Fed. R. App. P. 4(a)(1)(A); Campbell v. Wainwright, 726 F.2d 702, 703 (11th Cir. 1984).  However, Rule 4 also provides that "[w]hen the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered."  Fed. R. App. P. 4(a)(1)(B).

The district court dismissed Apostolo's claim with prejudice on October 22, 2008, but Apostolo's timely filed motion for reconsideration pushed forward the time for filing a notice of appeal.  Fed. R. App. 4(a)(4)(A).  The time for filing the notice of appeal began to run when the district court denied the  motion for reconsideration on December 4, 2008.

Apostolo filed his notice of appeal on January 6, 2009, more than thirty days after the district court's order denying his motion for reconsideration, but fewer than sixty days after that order.  See Fed. R. App. P. 4(d), 26(a)(1).  Whether we have jurisdiction therefore depends on whether Rule 4(a)(1)(A)'s thirty-day period or Rule 4(a)(1)(B)'s sixty-day period for filing a notice of appeal applies to Apostolo's appeal.  If the sixty-day period applies, the notice of appeal was timely; if not, then not.[1]

---

[1] In his notice of appeal, Apostolo also seeks review of the district court's orders denying through summary disposition the claims of two of his relatives, Maria de Castillo and Maria

6

In Virginia Land Co. v. Miami Shipbuilding Corp., 201 F.2d 506 (5th Cir. 1953), our predecessor court held that the thirty-day appeal period applied even though the United States had been a party to the original lawsuit, because the United States, despite remaining nominally a party, no longer had sufficient interest in the litigation to warrant application of the sixty-day period.[2] Id. at 508. Schultz argues that Miami Shipbuilding controls because the SEC ceased participating in the Pension Fund litigation after judgment was entered against each of the defendants named in the SEC's complaint, and the SEC's enforcement action was administratively closed six months before Apostolo filed his claim.

We disagree. The orders appealed from in Miami Shipbuilding were entered four years after the receivership property had been returned to the defendant corporation and the receiver had been dismissed. Id. In light of that fact, the former Fifth Circuit reasoned that "the United States was not, and could not have been, a party at interest in the appeal." Id.

---

Elena Castillo de Apostolo. We entered an order on June 2, 2009, granting the receiver's motion to dismiss for lack of jurisdiction Apostolo's notice of appeal as to those orders. We did so because, even assuming Apostolo had standing to act on his relatives' behalf, the notice of appeal was not filed within sixty days of the orders summarily denying either relative's claims. As a result, it did not matter whether the thirty-day or sixty-day deadline for filing a notice of appeal applied.

[2] The Eleventh Circuit, in an en banc decision, Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered before October 1, 1981.

In contrast, the Pension Fund receivership remained in existence and active when the district court granted the receiver's motion for summary disposition of Apostolo's claims and then denied his motion for reconsideration. In order to protect the investors defrauded by Pension Fund's activities, the SEC requested the creation of the Pension Fund receivership and filed a motion for the appointment of a receiver. Because of its interest in protecting those who invested in Pension Fund, the SEC maintained an interest in the ongoing activities involving the Pension Fund receivership. See East v. Crowdus, 302 F.2d 645, 647 (8th Cir. 1962) ("Certainly, if a receiver is appointed in any such action and the Commission should learn of any unconscionable malfeasance or neglect on the part of the receiver, no court would hold that the Commission was without standing to bring such matters to the appointing court's attention; or that the Commission is without standing to give heed as to how the assets taken possession of by any such receiver are disposed of in the public interest."). The sixty-day period for filing a notice of appeal contained in Rule 4(a)(1)(B) therefore applies, and Apostolo's notice of appeal was timely filed. See, e.g., In re Paris Air Crash of March 3, 1974, 578 F.2d 264, 265 (9th Cir. 1978) ("We hold under these facts that when the United States is a named party, participates in the general action and is, or may be, interested in the outcome of an appeal, even though it is not a party to the appeal,

8

then it is a 'party' for purposes of F.R.A.P. 4(a) and the 60-day time limit for appeal applies.").

III.

On the merits, Apostolo argues that the district court denied him the due process guaranteed by the Fifth Amendment when it denied his claim seeking $8,640,000 in allegedly unpaid commissions from the receivership estate. Construing his brief liberally in light of his pro se status, Apostolo makes two arguments. Harris v. United Auto. Ins. Group, Inc., 579 F.3d 1227, 1231 n.2 (11th Cir. 2009). First, he argues that the district court erred by denying his claim without providing him with a hearing. Second, he argues that the district court erred in precluding the Pension Fund Regional Directors, as a group, from recovering against the receivership estate. Apostolo cites no authority in support of those arguments.

District courts have "broad powers and wide discretion to determine the appropriate relief in an equity receivership." S.E.C. v. Elliott, 953 F.2d 1560, 1569-70 (11th Cir. 1992). "Therefore, '[a]ny action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse.'" S.E.C. v. Safety Fin. Serv., Inc., 674 F.2d 368, 373 (5th Cir. 1982) (quoting S.E.C. v. Ark. Loan & Thrift

9

Corp., 427 F.2d 1171, 1172 (8th Cir. 1970) (alteration in original)). We have explained that the district court's "discretion derives from the inherent powers of an equity court to fashion relief," and that, "[i]n granting relief, it is appropriate for the district court to use summary proceedings." Elliot, 953 F.2d at 1560. A district court's use of summary proceedings in the course of overseeing an equity receivership must, of course, comply with due process. S.E.C. v. Basic Energy & Affiliated Res., Inc., 273 F.3d 657, 668 (6th Cir. 2001).

In Elliott, we explained that, in determining if summary proceedings comply with due process, "[w]e must look at the actual substance, not the name or form, of the procedure to see if the claimants' interests were adequately safeguarded." Elliott, 953 F.2d at 1567. We further explained that, generally, a district court's use of summary proceedings complies with due process if the parties are permitted "to present evidence when the facts are in dispute and to make arguments regarding those facts." Id. We added that appellants arguing that a district court's use of summary proceedings deprived them of due process "must show how they were prejudiced by the summary proceedings and how they would have been better able to defend their interests in a plenary proceeding." Id.

The summary procedures employed by the district court allowed both Apostolo and the receiver to conduct discovery and submit evidence. See Elliott,

10

953 F.2d at 1567 ("[A] district court generally does not abuse its discretion if its summary procedures permit parties to present evidence when the facts are in dispute."). Apostolo nevertheless argues that the district court deprived him of due process because "he never had a chance to present his claim personally to the District Judge to counter the baseless allegations of fraud made against him by the Receiver." But Apostolo never requested a hearing before the district court and does not explain how, if at all, he would have been better able to defend his interests in fuller proceedings. Id. at 1567, 1571.

Apostolo had an ample opportunity to make arguments to the district court in support of his claim seeking payment of more than eight million dollars from the receivership estate. He took advantage of that opportunity by presenting his arguments in support of his claim in his proof of claim, in his objection to the receiver's objection to his proof of claim, in his response to the receiver's motion for summary disposition of his claim, and in his motion for reconsideration. Because the summary procedures employed by the district court permitted Apostolo to present evidence and make arguments in support of his claim against the receivership estate, and because he has not convinced us that he would have been better able to defend his interests in a fuller proceeding, we reject his contention that the district court's use of summary proceedings deprived him of

11

due process.  Id. at 1567, 1571.

Apostolo also argues that the district court erred in denying his claim on the basis of his status as a former Regional Director and sales agent of the Pension Fund.  According to Apostolo, he did not personally commit fraud and as an "independent contractor" he cannot be held responsible for the fraud of the Pension Fund, its principals, or other Regional Directors and sales agents.  That argument misses the mark.

As we explained earlier, district courts have "broad powers and wide discretion to determine relief in an equity receivership."  Elliott, 953 F.2d at 1566; S.E.C. v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005) (explaining "extremely broad" nature of district court's power over an equity receivership). That wide discretion extends to "[a] district court's decision relating to the choice of distribution plan for the receivership."  Quilling v. Trade Partners, Inc., 572 F.3d 293, 298 (8th Cir. 2009); S.E.C. v. Credit Bancorp. Ltd., 290 F.3d 80, 88 (2d Cir. 2002).   Because the district court possesses such wide discretion, it has the authority "to classify claims sensibly in receivership proceedings."  S.E.C. v. Enter. Trust Co., 559 F.3d 649, 652 (7th Cir. 2009); Basic Energy, 273 F.3d at 670 ("Thus, the district court used its discretion in a logical way to divide the money, and therefore, did not abuse its discretion in approving the plan.").  In approving a

distribution plan following disgorgement in an SEC enforcement action, "it remains in the district court's discretion to determine how and to whom the money will be distributed, and the district court's distribution plan will not be disturbed on appeal unless that discretion has been abused." S.E.C. v. Fischbach Corp., 133 F.3d 170, 175 (2d Cir. 1997). The district court did not abuse its wide discretion when it categorically precluded the Pension Fund's former Regional Directors and sales agents from recovering from the receivership estate.

No one doubts that Pension Fund was a massive and, for a time, successful fraud that bilked thousands of investors. Apostolo admitted on his proof of claim form that he had served as a sales agent and Regional Director and had put a great deal of effort into promoting and marketing Pension Fund's products to investors. He also attached his Regional Director contract to his claim form. That contract states that "[t]he Regional Director is hereby appointed as [the Pension Fund's] representative for the purpose of soliciting applications for the pension plan programs and other financial products developed by [the Pension Fund]." In short, Regional Directors like Apostolo were responsible for recruiting the investors who ultimately suffered losses due to the Pension Fund's fraud. It was entirely reasonable for the district court to refuse to allow former Regional Directors and sales agents of the fraudulent fund to recover from the assets of the receivership

estate.

The district court's logic applies with even greater force to Apostolo specifically. In a letter attached to his proof of claim form, Apostolo states that he received at least $660,000 in commissions from the Pension Fund before the receivership was instituted. Those commissions were derived from the funds of investors who were victimized by the fraudulent scheme. He was paid those commissions for actions that helped further the fraud. Apostolo even admits in his brief that his claim seeks payment of commissions on two sales of the Pension Fund's securities in which the investors suffered combined losses totaling more than $35,000,000. One of those investors is the largest single creditor of the receivership estate. The district court allowed the claims of those two investors and authorized the receiver to make distributions to them.

Those facts led the district court to reason, in denying Apostolo's motion for reconsideration, that:

> it would be inconsistent with the equitable distribution of receivership assets to reduce the total potential recovery of the Settlement Class by compensating a former Pension Fund Sales Agent and/or Regional Director for commissions and/or wages earned in furtherance of the very fraudulent scheme that caused the losses at issue.

That is a masterful understatement, which we will match with one of our own: the

14

district court did not abuse its "broad powers and wide discretion" in rejecting Apostolo's claim against the receivership assets.  Elliott, 953 F.2d at 1566.

## IV.

The motion to dismiss this appeal is DENIED, but the judgment of the district court is AFFIRMED.