[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 12-15351 and 13-10005
_____

D.C. Docket No. 1:06-cv-21213-JAL

ZELAYA/CAPITAL INTERNATIONAL JUDGMENT, LLC,

Plaintiff - Appellant,

versus

JOHN ZELAYA, et al.,

Defendants - Appellees.
_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(October 23, 2014)

Before TJOFLAT, JULIE CARNES, and GILMAN,* Circuit Judges.

GILMAN, Circuit Judge:

---

* Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

This case stems from Zelaya/Capital International Judgment, LLC's (ZC's) attempt to collect on a $2,678,137.11 judgment that was entered against John Zelaya in February 2004.   The 2004 judgment against Zelaya was rendered by the United States District Court for the Southern District of New York and was registered in the Southern District of Florida in May 2006.   ZC, however, was not a party to the suit that led to the judgment.   Instead, the prevailing parties in the 2004 case (Thomas Telegades, Peter Tosto, and two investment firms) assigned their interests in the judgment to ZC in May 2009, except that Tosto retained a 25% interest in any amount recovered by ZC.

ZC subsequently sought a writ of execution against Zelaya from the Southern District of Florida in September 2009.   Soon afterward, ZC served writs of garnishment on numerous banks that it believed were holding Zelaya's assets, including Deutsche Bank.   The Securities and Exchange Commission (SEC) later intervened in the case, asserting that it was entitled to a portion of Tosto's 25% interest in the 2004 judgment.

In June 2010, Zelaya deposited the full amount of the judgment (plus post-judgment interest) into the district court's registry.   The court then dissolved the writs of garnishment against all of the banks, granted Zelaya's motion for a satisfaction of the judgment, and awarded attorney fees and costs to Deutsche Bank. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

2

## I.  BACKGROUND

In 2002, the SEC obtained a $4,480,063.82 judgment against Tosto in the Southern District of New York based on claims of market manipulation.   Tosto, in turn, obtained a $2,678,137.11 judgment against Zelaya in the same court in February 2004.   The 2004 judgment was subsequently assigned to ZC in May 2009. Tosto, however, retained a 25% interest in any recovery by ZC on the 2004 judgment.

In May 2006, ZC registered the 2004 judgment in the Southern District of Florida.   The case remained dormant until September 2009, when a writ of execution was issued against Zelaya.   Writs of garnishment were also served on the banks that were believed to hold Zelaya's assets.   One of the garnishee banks, Deutsche Bank, filed an answer to the writ of garnishment in November 2009.   In its answer, Deutsche Bank disclosed that one of its accounts (held by an entity called "Investors Trust Administration, LLC") might be subject to the garnishment.

ZC then moved for a default judgment against Deutsche Bank, arguing that the bank's answer to the writ of garnishment was untimely under Florida law, and that ZC was therefore entitled to an amount from the garnished account sufficient to satisfy the 2004 judgment.   The motion for default judgment against Deutsche Bank prompted several rounds of motions practice, multiple subpoenas, and a hearing before a magistrate judge.

3

In January 2010, the SEC served Zelaya with its own writ of garnishment. The writ contended that the SEC had an interest in the 2004 judgment against Zelaya by virtue of its interest in the 2002 judgment against Tosto. In particular, the writ alleged that Zelaya "may have possession, custody or control of property in which . . . Peter Tosto . . . has a substantial nonexempt interest." The SEC's allegation was premised on the fact that Tosto had retained a 25% interest in whatever amount ZC might collect on the 2004 judgment.

Zelaya was accordingly faced with competing claims. On the one hand, ZC asserted an interest in Zelaya's funds as the assignee of the 2004 judgment against Zelaya. On the other hand, the SEC asserted an interest as the judgment creditor of its 2002 judgment against Tosto. The SEC, moreover, alleged that Tosto's assignment of the 2004 judgment to ZC might have been fraudulent. Zelaya responded to this dilemma by filing a motion in May 2010 for (1) leave to deposit the judgment amount plus post-judgment interest into the registry of the district court, or (2) leave to file an interpleader action.

The magistrate judge assigned to the case held a hearing on Zelaya's motion in June 2010. One day after the hearing, the magistrate judge issued an omnibus order in which he granted Zelaya leave to deposit the disputed funds (the $2,678,137.11 judgment plus post-judgment interest, for a total of $2,892,250.82) into the court's registry. Zelaya deposited the funds five days later.

4

ZC then filed objections to the magistrate judge's omnibus order.   Among its objections, ZC contended that the district court lacked jurisdiction under Rule 69(a) of the Federal Rules of Civil Procedure (which governs the procedure for collecting on a judgment in federal court) and under Florida law to adjudicate the dispute over the ownership of the funds.   It also argued that Zelaya's motion amounted to an impermissible collateral attack on the 2004 judgment.   Finally, ZC argued that allowing Zelaya to deposit the disputed funds into the court's registry unfairly deprived ZC of property to which it was entitled.

The district court subsequently denied all of ZC's objections to the June 2010 omnibus order, explaining that Rule 67 of the Federal Rules of Civil Procedure commits the decision of whether to grant leave to deposit funds into the registry to the court's sound discretion.   It held that the magistrate judge had not erred in allowing Zelaya to deposit the disputed funds into the court's registry pursuant to Rule 67.

Following the deposit by Zelaya, the magistrate judge issued additional orders that further streamlined the proceedings.   One of the orders, which was issued in September 2010, dissolved the writs of garnishment against the banks.   The magistrate judge reasoned that "Zelaya's deposit into the Court's registry has now obviated the need for the writs associated with the above-listed [garnishment] motions to remain in place."

Another order granted the SEC's motion to intervene in the case as a matter of right.  The magistrate judge noted in the order that the SEC claimed that it was "entitled to at least a portion of the amount currently deposited in the court registry by reason of its [2002] judgment against Tosto" and that it "might be entitled to more if there was indeed a fraudulent assignment by Tosto of his interest in the 2004 judgment against . . . Zelaya."

ZC filed objections to both the dissolution and intervention orders.  The district court again denied all of ZC's objections.  In affirming the dissolution order, the court explained that the dissolution of the writs of garnishment had not resulted in any prejudice to ZC because the disputed amount was being safeguarded in the court's registry.   And the intervention order was proper because, among other things, the SEC had adequately established its interest in part of the 2004 judgment.

ZC next filed a notice of appeal from the order affirming the dissolution of the writs of garnishment.  That appeal, however, was dismissed by this court in May 2011 for lack of subject-matter jurisdiction because the dissolution of the writs of garnishment did not constitute a final decision of the district court.

Another dispute arose over a motion by Zelaya seeking an acknowledgement that he had satisfied the judgment, which he filed in December 2010.  ZC opposed the motion on the ground that it had not yet received the funds deposited into the court's registry.   The magistrate judge recommended that Zelaya's motion be

6

granted.   ZC objected to the report and recommendation, contending that a satisfaction of the judgment would violate both Rule 69(a) of the Federal Rules of Civil Procedure and Florida law.   The district court denied ZC's objections and adopted the report and recommendation in full in August 2012.

The final part of the procedural history relevant to this appeal is Deutsche Bank's motion for attorney fees and costs, which was filed in October 2010 after the district court had dissolved the writs of garnishment.   Deutsche Bank contended that it was entitled to recover these expenses under Florida law (Fla. Stat. § 77.28) as a garnishee bank.

In its motion, Deutsche Bank requested a total of $88,305.70 for such expenditures.   It submitted detailed time and cost records in support of its request. Deutsche Bank explained that, as a result of the writ of garnishment served upon it by ZC, the bank had been

> forced to respond to a motion to hold [Deutsche Bank] in default, forced to review numerous motions to dissolve writs of garnishment filed by [Zelaya], subpoenaed to appear at a hearing on [Zelaya's] motion to dissolve, successfully moved to quash an improperly served subpoena to appear at a hearing on a motion to dissolve the writ, arranged for two witnesses to travel from New York with counsel to appear at a hearing in the matter, collected documents and information in response to subpoenas served related to the writ of garnishment and required to carefully monitor numerous motions in the matter that had potential implications for [Deutsche Bank's] obligations.

7

The magistrate judge granted Deutsche Bank's motion in part. Characterizing the case as "lengthy and aggressively litigated," he concluded that Deutsche Bank was statutorily entitled to attorney fees and costs from ZC. The magistrate judge nonetheless determined that the fees and costs were somewhat high. He therefore reduced them by 20% across the board. Deutsche Bank did not protest, but ZC filed objections to the award. The district court overruled ZC's objections in August 2012.

A notice of appeal by ZC followed in October of the same year. ZC challenged the district court's orders allowing Zelaya to deposit funds into the court's registry, dissolving the writs of garnishment, issuing a satisfaction of the judgment, and awarding Deutsche Bank attorney fees and costs.

Shortly after ZC filed its notice of appeal in October 2012, the SEC and ZC settled their dispute over the funds deposited into the court's registry. The SEC then filed a motion to withdraw as an intervenor and to withdraw its writ of garnishment against Zelaya. In response, the district court granted the SEC's motion and disbursed the funds (a total of $2,895,365.01, which included interest that had accrued while the funds were in the court's registry) to ZC.

ZC then filed a second notice of appeal in December 2012, objecting on the same grounds as the October 2012 appeal but also appealing from a final order

8

entered in the case on October 29, 2012.  The October 2012 and December 2012 appeals were consolidated by this court in January 2013.

## II.  ANALYSIS

### A.    Standard of review

All of the decisions by the district court at issue in this appeal (namely, allowing Zelaya to deposit the disputed funds into the court's registry, dissolving the writs of garnishment, issuing a satisfaction of the judgment, and awarding attorney fees and costs to Deutsche Bank) are reviewed under the abuse-of-discretion standard.  *See Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1475 (5th Cir. 1987) (reviewing a district court's decision to grant relief under Rule 67 of the Federal Rules of Civil Procedure under the abuse-of-discretion standard); *United States v. Rostan*, 565 F. App'x 798, 800 n.2 (11th Cir. 2014) (unpublished) (noting the Fifth Circuit's holding in *United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2010), that a garnishment order is reviewed for abuse of discretion); *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1270 (11th Cir. 2009) (holding that a district court's decision to issue a satisfaction of the judgment pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure is reviewed under the abuse-of-discretion standard); *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 418 (5th Cir. 2005) (holding that an award of attorney fees in a garnishment action is reviewed under the abuse-of-discretion

9

standard). We will not find that the district court abused its discretion unless it applied the wrong law or its decision was manifestly erroneous. *United States v. Barner*, 441 F.3d 1310, 1315 n.5 (11th Cir. 2006) (holding that a mistake of law is by definition an abuse of discretion) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)); *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (discussing the abuse-of-discretion standard of review).

## B.    This court has jurisdiction over the consolidated appeal

Zelaya contends as a threshold matter that this court lacks jurisdiction over the consolidated appeal. He argues that ZC's October 2012 notice of appeal was premature because the district court's August 2012 order (in which the court affirmed the magistrate judge's order granting Zelaya's motion for a satisfaction of the judgment) did not dispose of all of the issues in the case. In particular, Zelaya asserts that the issue of which party was entitled to the funds in the court's registry was not resolved by the August 2012 order.

Zelaya further argues that the December 2012 notice of appeal did not cure the allegedly premature October 2012 notice of appeal. And although Zelaya acknowledges that Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure enlarges the time period for filing a notice of appeal from 30 days to 60 days when the government is a party, he asserts that Rule 4(a)(1)(B) is inapplicable because the SEC withdrew as an intervenor before the October 2012 notice of appeal was filed.

10

Zelaya's jurisdictional argument lacks merit.   For one thing, the August 2012 order resolved the issue that gave rise rise to the post-judgment proceedings, so it was a final order for the purpose of the October 2012 notice of appeal.   *See Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (holding that "an order is deemed final if it disposes of all the issues raised in the motion that initially sparked the postjudgment proceedings").   Here, the issue that initially sparked the post-judgment proceedings was the writ of execution against Zelaya, which was resolved when the district court entered a satisfaction of the judgment in August 2012.

The second flaw in Zelaya's jurisdictional argument is that the SEC's withdrawal as an intervenor did not shorten the appeal period from 60 days to 30 days because the SEC retained an interest in the outcome of the appeal due to its entitlement to at least a part of Tosto's recovery.   *See SEC v. Pension Fund of Am. L.C.*, 377 F. App'x 957, 961 (11th Cir. 2010) (per curiam) (holding that the 60-day period for filing a notice of appeal applies where the "SEC maintain[s] an interest" in the outcome of the appeal, even if the SEC is not a party to the appeal).   This court accordingly has jurisdiction over the consolidated appeal.

**C.    The district court did not err in allowing Zelaya to deposit the disputed funds into the court's registry**

11

Turning now to the merits of the appeal, we first address ZC's contention that the district court erred when it allowed Zelaya to deposit the disputed funds into the court's registry. ZC offers a number of arguments in support of this contention.

First, ZC argues that permitting Zelaya to interplead the disputed funds amounted to an impermissible collateral attack on the 2004 judgment. This argument lacks persuasive force because Zelaya did not challenge the validity of the 2004 judgment. Instead, as the district court explained, Zelaya was "ready and willing to pay the amount of the judgment" but found himself "in a dilemma not of his own making."

The caselaw and the Federal Rules of Civil Procedure, moreover, support the district court's decision to permit Zelaya to deposit the disputed funds into the court's registry. One case in particular, *United States Overseas Airlines v. Compania Aerea Viajes Expresos de Venezuela, S.A.*, 161 F. Supp. 513 (S.D.N.Y. 1958), is directly on point. In *Overseas Airlines*, a judgment debtor sought leave from the district court to deposit funds into the court's registry when two judgment creditors asserted conflicting claims to the funds. The court, invoking Rule 67 of the Federal Rules of Civil Procedure, allowed the judgment debtor to deposit the funds. *Id.* at 515–16. It held that "the dilemma [was] not of the judgment debtor['s] making" and that the debtor "should be permitted to pay the amount of the

12

judgment into court and to have the Clerk enter a satisfaction of judgment." *Id.* at 515.

The district court in the present case did not err in relying on *Overseas Airlines*. Furthermore, Rule 67 specifically authorizes the court's actions. Rule 67 provides that "[i]f any part of the relief sought is a money judgment or the disposition of a sum of money . . . , a party . . . may deposit with the court all or part of the money." Fed. R. Civ. P. 67(a). The "core purpose" of the rule is to "relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto." *Alstom Caribe, Inc. v. Geo. P. Reintjes Co.*, 484 F.3d 106, 113 (1st Cir. 2007). Those were precisely the circumstances faced by the district court here, and the court did not abuse its discretion by applying Rule 67 to arrive at an "insightful and equitable solution to the dilemma facing [Zelaya]." *See Cajun Elec. Power Coop., Inc. v. Riley Stoker Corp.*, 901 F.2d 441, 445 (5th Cir. 1990).

ZC further argues that the district court impermissibly froze ZC's assets and enjoined ZC from executing on the 2004 judgment by allowing the disputed funds to be deposited into the court's registry. In support of this argument, ZC cites various cases in which federal courts have held that a defendant's assets may not be frozen via an injunction for the purpose of preserving the assets to satisfy a potential future judgment. *See, e.g.*, *De Beers Consol. Mines v. United States*, 325 U.S. 212 (1945).

13

These cases, however, are easily distinguishable both because the judgment here was final, not simply potential, and because the district court did not enter an asset freeze against ZC at all.   The court instead allowed Zelaya to deposit the disputed funds into the court's registry while ZC and the SEC resolved their competing claims.   *See Overseas Airlines*, 161 F. Supp. at 515 (holding that Rule 67 is "broad enough to authorize the payment into court of a judgment, notwithstanding that there are adverse claims to the proceeds of the judgment").   ZC's argument that the court's actions amounted to an impermissible asset freeze and injunction therefore lacks merit.

Next, ZC contends that it was entitled to immediate access to the judgment amount because the SEC's claim to the funds was invalid from the outset.   This argument, however, is fatally flawed because the law does not require a judgment debtor to decide the validity of competing claims.   *Cf. Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 898 (9th Cir. 2012) (holding that the remedy of interpleader, which allows a stakeholder to join parties with claims that may expose him to multiple liability, "is designed so that stakeholders do not have to make legal predictions about the merits of claims").   Zelaya, in other words, was not required to take the risk that the SEC's claim might prove meritorious and thus cause Zelaya to pay twice.   We therefore reject ZC's arguments on this point.

14

ZC also contends that the district court erred in halting the post-judgment accrual of statutory interest after Zelaya deposited the disputed funds. Citing Florida law, ZC argues that "post-judgment [statutory] interest is not cut off by payment of funds into the court registry." The federal courts, however, have overwhelmingly held that post-judgment statutory interest stops accruing once the disputed funds are deposited into the court's registry. *See, e.g.*, *Cordero v. Jesus-Mendez*, 922 F.2d 11, 18–19 (1st Cir. 1990) (stating the rule). And even if Florida law applied to this procedural issue (which it does not), ZC has misstated the law. In a case directly on point, the Florida District Court of Appeal has held that depositing funds into the court's registry "precludes a levy from being made against [the debtor's] property, [and] arrests the further accrual of interest on the judgment." *Gerardi v. Carlisle*, 232 So. 2d 36, 39 (Fla. Dist. Ct. App. 1969). The district court accordingly did not err in holding that the deposit by Zelaya halted the post-judgment accrual of statutory interest.

ZC further attacks the district court's decision to dissolve the writs of garnishment against the banks. The court dissolved the writs as moot following Zelaya's deposit of the disputed funds into the court's registry. ZC argues that the court violated Florida law by dissolving the writs prematurely.

Writs of garnishment are governed in the first instance by Rule 69 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 69(a)(1) (explaining that the

15

"procedure on execution, in proceedings supplementary to and in aid of a judgment, . . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies").   Rule 69 thus provides that Florida law applies to the writs in question to the extent that it does not conflict with federal law.

Under Florida law, the purpose of a writ of garnishment is to help the judgment creditor secure a debt owed to the creditor by the judgment debtor. *Pleasant Valley Farms & Morey Condensory Co. v. Carl*, 106 So. 427, 429 (Fla. 1925) (noting that a writ of garnishment "is a substantial . . . and a material aid in the collection of the debt held by [the creditor] against the defendant").   Florida law permits a court to dissolve a writ of garnishment on its own motion for any number of reasons.   *See id.* (holding that writs of garnishment may be dissolved sua sponte by the court).   In this case, the writs of garnishment against the banks served no purpose once the disputed funds had been deposited by Zelaya into the court's registry.   ZC needed no further help in securing its debt at that point because the entire amount of the judgment plus post-judgment interest was being safeguarded by the district court.   The court therefore did not err in dissolving as moot the writs of garnishment.

**D.    The district court did not err in granting Zelaya's motion for a satisfaction of the judgment**

16

Turning now to the satisfaction-of-judgment issue, ZC contends that the district court erred in issuing a satisfaction of the judgment to Zelaya.  ZC argues that the satisfaction was premature because it was issued in August 2012, three months before the district court disbursed the disputed funds to ZC.  According to ZC, this premature satisfaction violated Florida law.  ZC also argues that the court erred in relying on Rule 60(b)(5) of the Federal Rules of Civil Procedure in issuing the satisfaction.

The argument against applying Rule 60(b)(5) can be disposed of quickly. Federal courts regularly issue satisfactions of judgment pursuant to Rule 60(b)(5). *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007) ("Rule 60(b)(5) is generally invoked when a party seeks entry of satisfaction of judgment because no acknowledgment of satisfaction has been delivered due to an ongoing dispute over the judgment amount.").

As for ZC's argument that the district court issued a premature satisfaction of the judgment, this argument fails because the satisfaction comported with Florida law in all relevant respects.   Florida law provides that the debtor's deposit of the full amount of the judgment plus post-judgment interest in the court's registry "satisfies the judgment."   *Weaver v. Stone*, 212 So. 2d 80, 81 (Fla. Dist. Ct. App. 1968) (citing Fla. Stat. § 55.141).   And Florida law does not require the plaintiff to accept the tendered amount before a satisfaction of the judgment may be issued.  *See id.*

17

("There is no requirement that the plaintiff consent to the satisfaction."). The district court thus did not err in issuing a satisfaction of the judgment to Zelaya after he deposited the disputed funds in the court's registry.

**E.    The district court did not err in its award of attorney fees and costs to Deutsche Bank**

Finally, ZC challenges the award of attorney fees and costs to Deutsche Bank. ZC's main argument is that it was improperly deprived of the right to a jury trial on the writ of garnishment issued against Deutsche Bank. According to ZC, Florida law guarantees the right to a jury trial in a garnishment action. ZC contends that a jury should have determined whether Deutsche Bank was an innocent stakeholder before the district court awarded attorney fees and costs to the bank.

ZC's jury-trial argument has some surface plausibility. Specifically, the Florida statute cited by ZC (Fla. Stat. § 77.08) does provide for jury trials in garnishment actions, *see id.* ("On demand of either party a jury summoned from the body of the county shall be impaneled to try the issues."), but the right to a jury trial in a garnishment action is not absolute notwithstanding the statute's use of the word "shall." A jury trial is not required, for example, if it would serve no purpose. *See Tortuga Marine Salvage Co. v. Hartford Acc. & Indem. Co.*, 171 So. 2d 54, 55 (Fla. Dist. Ct. App. 1965) (holding that the right to a jury trial in a garnishment action is not absolute where "a summary ruling on the question of title to the garnished property" is warranted); *see also SEC v. Mut. Benefits Corp.*, No.

18

04-60573-CIV, 2010 WL 5148461, at *2 (S.D. Fla. Nov. 30, 2010) ("Both parties recognize that under Florida law, summary judgment in a garnishment proceeding is appropriate when there are no issues of material fact . . . .").

The purpose of jury trials in garnishment actions, moreover, is to resolve any issues raised in a garnishee's answer to the writ of garnishment. *Windsor-Thomas Grp., Inc. v. Parker*, 782 So. 2d 478, 483 (Fla. Dist. Ct. App. 2001) (explaining the purpose of jury trials in garnishment actions). A jury trial in the present case would have served no purpose because the writs were properly dissolved by the district court following Zelaya's deposit of the disputed funds into the court's registry. The deposit by Zelaya thereby mooted the issues, if any, raised in Deutsche Bank's answer to the writ of garnishment. No jury trial was required under these circumstances.

Nor was the district court required to make a threshold determination that Deutsche Bank was an innocent stakeholder before awarding attorney fees and costs to the bank. Nothing in § 77.28 or any other section of Florida's garnishment statute requires such a determination. *See generally* Fla. Stat. §§ 77.01-.28. And Florida courts have held that a trial court may award attorney fees and costs in a garnishment action to a party in its discretion even where there is no prevailing party. *See First Nat'l Bank & Trust of Stuart v. Bryan*, 427 So. 2d 392, 392 (Fla. Dist. Ct. App. 1983) ("Allocation of that portion of the [attorney] fee . . . was

19

appropriate in view of the fact that these parties entered into a settlement agreement, so that as between them there was no prevailing party."). ZC's innocent-stakeholder argument thus lacks merit.

ZC also protests that the net amount of attorney fees and costs awarded to Deutsche Bank (a total of $70,644.56) was excessive and unreasonable. In particular, ZC asserts that Deutsche Bank's positions are inconsistent. It argues that Deutsche Bank cannot be a disinterested, innocent garnishee while simultaneously requiring "the services of five attorneys working a total of 200 hours" to comply with the writ of garnishment.

This argument, however, ignores the fact that ZC is largely responsible for the efforts expended by Deutsche Bank in this case. As the magistrate judge noted, the garnishment proceedings were "lengthy and aggressively litigated." The magistrate judge's observation is an understatement. Over 450 entries appear on the district-court docket in the proceedings, which is an unusually high number for a garnishment action. And ZC objected to virtually everything that the magistrate judge did. In short, Deutsche Bank had no choice but to invest substantial time in this case due to ZC's aggressive conduct.

The same conduct is also what led the district court to conclude that ZC should be responsible for paying Deutsche Bank's attorney fees and costs. ZC argues that Zelaya should instead be the one to pay. In a typical garnishment

20

proceeding, the costs of the garnishee are taxed against the prevailing party. *See* Fla. Stat. § 77.28. But Florida law does not answer the question of who should pay a garnishee's attorney fees and costs when no party has truly prevailed. The district court reasoned, based on a similar case in Texas, that where Florida's garnishment statute does not "mandate which party should bear the garnishee bank's expenses in the circumstances of the instant case, the matter lies within the discretion of the trial court." *See Cantu v. Butron*, 905 S.W.2d 718, 720 (Tex. Ct. App. 1995).

In exercising its discretion, the district court concluded that Zelaya should not be charged with Deutsche Bank's attorney fees and costs because "he was not actually responsible for these particular garnishment proceedings absent any finding that he controlled the Investors Trust accounts [held by Deutsche Bank]." On the other hand, ZC initiated and vigorously litigated the garnishment proceedings, and then failed to meet its burden of proving that the account to be garnished was Zelaya's property. *See Nat'l Car Rental Sys., Inc. v. Bruce A. Ryals Enters., Inc.*, 380 So.2d 529, 530 (Fla. Dist. Ct. App. 1980) (noting that the garnishor must prove that the property to be garnished is the debtor's). The district court therefore did not abuse its discretion in determining that ZC should pay Deutsche Bank's attorney fees and costs.

ZC further argues that the district court should have permitted discovery and held an evidentiary hearing regarding Deutsche Bank's claim. But ZC never

21

offered any particularized objection to the attorney fees and costs sought by Deutsche Bank, so its argument lacks merit. *See Gonzalez v. J.C. Penney Corp.*, 209 F. App'x 867, 870 (11th Cir. 2006) (holding that an evidentiary hearing on attorney fees is required only when "there [a]re disputes of fact, and where the written record [i]s not sufficiently clear to allow the trial court to resolve the disputes") (alterations in original and internal quotation marks omitted).

The record in this case is sufficiently clear to allow the district court to resolve the attorney-fees issue without a hearing. *See id.* ("It is perfectly proper to award attorney's fees based solely on affidavits in the records.") (internal quotation marks omitted). Finally, the court adequately considered ZC's general objections to Deutsche Bank's request for attorney fees and costs and affirmed the magistrate judge's 20% reduction. *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (holding that an across-the-board percentage reduction in attorney fees is appropriate so long as the court provides a "concise but clear explanation of its reasons for the reduction"). We thus conclude that the district court did not abuse its discretion regarding the amount of attorney fees and costs to be paid Deutsche Bank from the judgment funds otherwise due ZC.

## VI.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

22